747 N.W.2d 613 (2008)
275 Neb. 517
STATE of Nebraska, appellee,
v.
Denise R. WELCH, appellant.
No. S-07-289.
Supreme Court of Nebraska.
April 18, 2008.
*615 Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., Lincoln, for appellant.
Jon Bruning, Attorney General, and Erin E. Leuenberger, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
As a result of charges stemming from a motor vehicle-pedestrian accident, Denise R. Welch was convicted of misdemeanor motor vehicle homicide by a jury at a trial conducted in the county court for Lancaster County. Welch appealed her conviction to the district court for Lancaster County and claimed that the county court had erred in instructing the jury on a theory of guilt that was not supported by the evidence. The district court rejected Welch's argument and affirmed her conviction. Welch appeals. We conclude that the evidence did not support the challenged instruction regarding a driver's duty to exercise proper precaution with respect to an obviously confused or incapacitated person. We therefore reverse the decision of the district court and remand the cause with directions to reverse the conviction and remand the matter to the county court for a new trial.

STATEMENT OF FACTS
Welch was charged in county court with misdemeanor motor vehicle homicide in violation of Neb.Rev.Stat. § 28-306 (Cum. Supp. 2004). The charge arose from an accident that occurred on October 7, 2005, in which a van driven by Welch collided with a pedestrian, Mitchell Fitzgibbons, at the intersection of 19th and South Streets in Lincoln, Nebraska. Fitzgibbons was knocked to the ground and died as a result of injuries received in the accident.
*616 Officer Bryan Tankesley testified at the trial in this matter. At approximately 12:30 p.m. on October 7, 2005, Tankesley responded to a report of an injury accident at 19th and South Streets. Nineteenth Street runs north-south, and South Street runs east-west. When he arrived at the intersection, he observed a Dodge Caravan that appeared to have been turning right off of 19th Street to go eastbound on South Street. He also saw Fitzgibbons lying on the ground near the passenger side of the van. Fitzgibbons appeared to have suffered significant head trauma. Tankesley spoke with Welch, who had been identified as the driver of the van.
Tankesley testified regarding Welch's statements to him at the scene. Welch was driving northbound on 19th Street and stopped at the stop sign south of the intersection with South Street. Welch saw Fitzgibbons standing at the corner but "she didn't pay all that much attention to him" because he had stopped walking and she "figured that he was going to stop and wait for her to proceed with her turn." Welch looked to make sure traffic was safe and proceeded with her turn. She then "heard a bang, felt a thud, felt the van rock just a little bit" and realized that her van had come into contact with Fitzgibbons. She stopped the van, got out and ran to see what had happened. She saw that her front passenger tire was on Fitzgibbons' upper arm area and so she backed the van off of him. By that time, witnesses had stopped to help.
After questioning Welch, Tankesley referred her to another officer, Richard Roh, for further questioning. Roh testified that he asked Welch to make a taped statement of what she recalled about the accident and that Welch agreed to do so. Roh took Welch to the main police station to make the taped statement, which was admitted into evidence at trial and played for the jury without objection. A transcript of the taped statement was also admitted into evidence without objection, and the jury was allowed to use the transcript to follow along while the tape was played.
In the taped statement, Welch stated that she saw Fitzgibbons at the southeast corner of 19th and South Streets and that she was not sure whether he was intending to go west across 19th Street or north across South Street. She also stated that she thought that Fitzgibbons was "not all there, so I was afraid you know, I don't know what it is, it's a weird feeling I had with him, and I don't really know the guy, but I've seen him before, and I, I was wondering if he was mentally retarded or something." Welch further stated that she did not remember whether she was talking on her cellular telephone at the time she was turning onto South Street.
Fitzgibbons' mother testified at trial. At the time of his death, Fitzgibbons was 49 years old and lived with his mother at a home near the accident scene. He worked part time at an insurance company in Omaha, Nebraska, as an internal auditor. Fitzgibbons was visually impaired as a result of diabetes and could not drive due to this impairment. However, Fitzgibbons' mother testified that he did not let the diabetes "keep him from doing most everything he wanted to do"; that his visual impairment was not such that it would have prevented him, under ordinary circumstances, from safely negotiating the path he was taking at the time of the accident; and that he did not carry a white cane.
On the morning of October 7, 2005, Fitzgibbons and his mother had been working on a rental house they owned that was across the street from their home. Their home was on the south side of South Street east of 19th Street, and the rental house was on the north side of South *617 Street west of 19th Street. They walked home to have lunch, and afterward, Fitzgibbons left to return to the rental house while his mother stayed to finish tasks at home. Shortly thereafter, she noticed that traffic had slowed on South Street and she looked out her front door and saw that Fitzgibbons had been injured.
Four persons who witnessed the accident testified for the State. Susan Blasius testified that she was driving eastbound on South Street and that she did not see the actual collision, but saw Fitzgibbons walking west down the sidewalk and Welch's van on 19th Street. She testified that afterward, she saw that Fitzgibbons had been hit. Carole Maasch testified that she was traveling in the right eastbound lane of South Street. She saw Welch's van moving north on 19th Street, and she "wasn't quite sure the van was going to stop, and so [she] wanted to stay aware" and pulled into the left lane in case the van did not stop. Maasch testified that "the van wasn't speeding or anything, but the van didn't stop and slow down, and I saw the van hit a man." Maasch saw the driver of the van looking westward toward oncoming traffic but did not see the driver look to check the other direction. Maasch testified that she was "fairly positive" that the driver was using a cellular telephone at the time of the accident.
Robin Derr testified that at the time of the accident, he was painting a house on the northeast corner of 19th and South Streets. He saw Fitzgibbons standing on the southeast corner of the intersection; he then saw the van pull up and "they were both kind of facing the same direction." Derr did not see the collision but he heard a screech and a thud. Derr ran across South Street to assist and saw Fitzgibbons lying on the ground underneath the van's front tire. Derr noted injuries to Fitzgibbons' head and bleeding from his ears and nose. Derr testified regarding his observation of Fitzgibbons after the accident that "by his facial expression, I thought maybe he [Fitzgibbons] was maybe mildly retarded or something ... like maybe he was a little slow."
Sean Barry testified that he was eastbound on South Street and that he saw Welch's van stopped about 10 feet back from the intersection and Fitzgibbons walking west on the sidewalk. Barry saw the van begin to move forward, and he moved from the right lane to the center lane either "because the van was in the street or I was moving over in anticipation of the van entering." Barry saw Fitzgibbons continue walking despite the fact that the van had started to move, and he saw Fitzgibbons' arms fly up in the air as Fitzgibbons and the van collided.
The State's other witnesses included a pathologist who testified that Fitzgibbons died as the result of head injuries that were caused by a fall to the ground rather than by his head striking the vehicle. The State also presented testimony by an accident reconstructionist who opined that based on his investigation, Fitzgibbons had been crossing 19th Street in the crosswalk when he was struck by Welch's vehicle, causing him to fall over backward and hit his head on the pavement.
In her defense, Welch presented the testimony of a professor with experience in accident reconstruction who opined that based on his investigation, a dent in the side of the van was caused by Fitzgibbons tripping or stumbling forward and hitting his head on the side of the van. Welch did not testify.
After both sides rested, the county court instructed the jury regarding, inter alia, the elements of motor vehicle homicide, § 28-306(1), as charged. In instruction No. 3, the court instructed that the elements of motor vehicle homicide included:

*618 Welch proximately caused the death of Mitchell Fitzgibbon [sic] unintentionally while in the commission of any of the following unlawful acts:
a. Careless driving as described in Instruction 4; or
b. Failure to Yield the Right of way as described in Instruction 5; or
c. Failing to exercise due care with a pedestrian as described in Instruction 6.
The elements described in paragraphs 3(a)-3(c) of this instruction constitute a single offense. Therefore, you need not agree unanimously on which unlawful act listed in element 3(a)-3(c) was committed by ... Welch, so long as you are unanimous that the State has proven beyond a reasonable doubt that an act of... Welch was unlawful as described in paragraphs 3(a)-3(c).
In instruction No. 6, the court instructed:
As to failure to exercise due care with a pedestrian the State must prove beyond a reasonable doubt, each of the following elements:
(A) ... Welch was driving a motor vehicle in this state;
(B) ... Welch did fail to exercise due care to avoid colliding with any pedestrian and give an audible signal when necessary; or
(C) ... Welch failed to exercise proper precaution upon observing a [sic] obviously confused or incapacitated person upon a roadway.
Instruction No. 6 was based on Neb. Rev.Stat. § 60-6,109 (Reissue 2004). At the instruction conference, the court overruled Welch's objection to instruction No. 6 and the portion of instruction No. 3 referring to instruction No. 6.
The jury found Welch guilty of motor vehicle homicide. The county court sentenced Welch to probation for 2 years.
Welch appealed her conviction to the district court for Lancaster County. She claimed that the county court erred in giving instructions Nos. 3 and 6 and, in particular, in instructing the jury regarding the duty owed by motorists to an obviously confused or incapacitated person, as set forth in instruction No. 6 which was derived from § 60-6,109. She argued that instruction No. 6 was not supported by the evidence because there was no evidence that Fitzgibbons appeared obviously confused or incapacitated and no evidence that he was on the "roadway." The court rejected Welch's arguments, finding that there was evidence, including photographs and drawings of the scene of the collision, which showed that Fitzgibbons was on the roadway. The court also noted Welch's statement to police that she thought that Fitzgibbons was "mentally retarded or something" and that he was "not all there" as evidence that Fitzgibbons was obviously confused or incapacitated. The district court affirmed Welch's conviction.
Welch appeals.

ASSIGNMENT OF ERROR
Welch challenges the giving of instructions Nos. 3 and 6 and claims that the county court erred in instructing the jury on a theory of guilt that was not supported by the evidence.

STANDARDS OF REVIEW
[1-3] Whether jury instructions given by a trial court are correct is a question of law. State v. Fischer, 272 Neb. 963, 726 N.W.2d 176 (2007). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. Id. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction *619 was prejudicial or otherwise adversely affected a substantial right of the appellant. Id.

ANALYSIS

Evidence Does Not Support Instruction Regarding "Obviously Confused or Incapacitated Person."
[4] Welch argues that the county court erred in giving instructions Nos. 3 and 6 because there was no evidence to support a finding that Fitzgibbons was "obviously confused or incapacitated." We agree that the evidence did not support an instruction regarding the care required with respect to an obviously confused or incapacitated person. We conclude that the county court erred in giving instruction No. 6(C) and that the instruction was prejudicial to Welch. We do not find error in instruction No. 3's reference to instruction No. 6, because, with a minor exception, the remainder of instruction No. 6 was proper and supported by the evidence.
[5, 6] Before an error in the giving of instructions can be considered as a ground for reversal of a conviction, it must be considered prejudicial to the rights of the defendant. State v. Fischer, supra. All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007). Welch does not claim that the instructions do not correctly state the law. Instead, she argues that instruction No. 6(C), the portion of the instruction relating to the duty of care to an obviously confused or incapacitated person, was misleading because the issue of a driver's duty to an obviously confused or incapacitated person was not supported by the evidence in this case.
Instruction No. 6 was adapted from § 60-6,109, which provides:
Notwithstanding the other provisions of the Nebraska Rules of the Road, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give an audible signal when necessary and shall exercise proper precaution upon observing any child or obviously confused or incapacitated person upon a roadway.
Section 60-6,109 sets forth both the duty a driver owes with respect to any pedestrian and the duty a driver owes with respect to particular persons, including children and persons who are obviously confused or incapacitated. The county court instructed on both duties in subparagraphs (B) and (C) of instruction No. 6. The county court instructed that in order to find that Welch had failed to exercise due care with a pedestrian, the jury would need to find either that "Welch did fail to exercise due care to avoid colliding with any pedestrian and give an audible signal when necessary" or that "Welch failed to exercise proper precaution upon observing a [sic] obviously confused or incapacitated person upon a roadway." The court therefore instructed on all parts of the statute except the reference to children which was not relevant in this case.
This court has previously considered § 60-6,109 and found that the statute "sets out a higher standard of care in the situations described in the statute." Hines v. Pollock, 229 Neb. 614, 619, 428 N.W.2d 207, 210 (1988) (interpreting Neb.Rev.Stat. § 39-644 (Reissue 1984), which was later transferred to § 60-6,109). See, also, Dutton v. Travis, 4 Neb.App. 875, 551 N.W.2d 759 (1996). Although our pronouncement was made in a civil case, it applies equally to the criminal case under consideration. *620 Thus, § 60-6,109 requires a driver to exercise "due care" with any pedestrian, but the statute requires a higher standard of care, described as "proper precaution," when the person is a child or the person is an obviously confused or incapacitated person. At issue in this case is consideration of the evidence necessary to support an instruction that a person is "obviously confused or incapacitated," thereby imposing a higher standard of care on a driver.
[7] As we read § 60-6,109, "obviously" refers to both "confused" persons and "incapacitated" persons and thus modifies both categories of persons. In the context of § 60-6,109, "confused" and "incapacitated" describe conditions which actually affect a person's ability to avoid coming to harm on a roadway, and the presence of persons with such conditions requires a driver to take greater care with regard to such persons. The statute's use of "obviously" means that the conditions referred to must be displayed. For a condition to be obvious, the condition must be objectively apparent through conduct or other unequivocal means such that a driver should be aware of the condition. We conclude that in order for a driver to be held to the higher standard of care in § 60-6,109, there must be evidence both that the person was actually confused or actually incapacitated and that such condition was objectively obvious to a reasonable driver.
In the present case, although there was evidence that Fitzgibbons suffered some degree of visual impairment, this evidence was not sufficient to characterize Fitzgibbons as either an actually "confused" or an actually "incapacitated" person under § 60-6,109 at the time of the accident, and, in addition, there is no evidence that his limitation, such as it was, was obvious. To the contrary, Fitzgibbons' mother testified that Fitzgibbons' sight was not such that it prevented Fitzgibbons from safely walking the path he was on at the time of the accident and that he had safely walked that route at other times. Further, although there was some evidence that Welch wondered about Fitzgibbons' condition and that another witness observed Fitzgibbons' facial expression after the accident and thought maybe he was mentally retarded, neither witness gave descriptions of Fitzgibbons' behavior or even appearance which warrants an objective conclusion that Fitzgibbons was an obviously confused or incapacitated person. Referring to the record as a whole, no witness described actions or conduct by Fitzgibbons or anything definitive about Fitzgibbons immediately prior to the accident which would objectively lead a reasonable driver to conclude that Fitzgibbons was an obviously confused or incapacitated person at the time of the accident.
In concluding that there was evidence to support the challenged instruction and affirming the decision of the county court, the district court relied on Welch's statements to police that she had seen Fitzgibbons before and had wondered whether he was "mentally retarded or something." Given the requirements of § 60-6,109, which we have described above, the district court's reliance on Welch's subjective feeling, without more, was misplaced. The record did not support an instruction that assumed without evidence that Fitzgibbons was an obviously confused or incapacitated person. We therefore conclude that the evidence did not support giving subparagraph (C) of instruction No. 6.
[8] As we have noted, there was no evidence from which the jury could have found that Fitzgibbons was "obviously confused or incapacitated," and therefore, the county court should not have instructed the jury it could find that Welch had failed to exercise due care with a pedestrian if it *621 found that "Welch failed to exercise proper precaution upon observing a[sic] obviously confused or incapacitated person upon a roadway." A jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous. State v. Stark, 272 Neb. 89, 718 N.W.2d 509 (2006). Subparagraph (C) of instruction No. 6 misstated the issues because it implied that there was evidence from which the jury could find that Fitzgibbons was "obviously confused or incapacitated" and that therefore, Welch was required to exercise the heightened standard of care described as "proper precaution" rather than the due care owed to any pedestrian. The county court erred in giving this portion of the instruction, and the district court erred when it affirmed the giving of this portion of the instruction.
[9] Although instruction No. 6(C) was not supported by the evidence, we conclude that the remainder of instruction No. 6 and instruction No. 3 were not erroneous. As noted above, a driver can violate § 60-6,109 either by failing to exercise proper precaution with the specifically listed types of persons or by failing to exercise due care with any pedestrian on the roadway. Although there was not evidence to support an instruction regarding whether Fitzgibbons was obviously confused or incapacitated requiring Welch to exercise the legally heightened duty of proper precaution, there was evidence to support an instruction regarding whether Fitzgibbons was a pedestrian in the roadway with respect to whom Welch was required to exercise due care. In this regard, we note that in State v. Mattan, 207 Neb. 679, 300 N.W.2d 810 (1981), this court determined that evidence was sufficient to find that the defendant caused the death of a pedestrian while operating a vehicle in violation of § 60-6,109 (then § 39-644). This court determined that there was evidence in Mattan that the driver failed to see a pedestrian who was in plain sight which could support a finding that the driver failed to "exercise due care to avoid colliding with any pedestrian upon any roadway" as required under § 60-6,109.
We note that there was evidence in the present case, in particular, the testimony of the State's accident reconstructionist, from which the jury could find that Fitzgibbons was a pedestrian upon the roadway when the collision occurred. There was also evidence from which the jury could find that although Welch had seen Fitzgibbons before the collision, she was looking in a different direction and did not see that he had left the corner at the time of the collision. From such evidence, the jury could have found that Welch failed to exercise due care to avoid colliding with a pedestrian on the roadway. Therefore, although the evidence did not support subparagraph (C) of instruction No. 6, the evidence supported the remainder of the instruction. For completeness, we note that subparagraph (B) of instruction No. 6 as given by the county court failed to specify that under § 60-6,109, the pedestrian must be "upon any roadway." In a new trial upon remand, instruction No. 6, subparagraph (B) should so specify.
[10] Finally, we conclude that the error in giving subparagraph (C) of instruction No. 6 was prejudicial to Welch and requires reversal of her conviction. Although, as indicated above, there was evidence, if believed, from which the jury could have found that Welch had violated § 60-6,109 on another basis, it is important to note that in instruction No. 3, the jury was instructed that it need not be unanimous in determining which unlawful act Welch had committed in order to find her guilty and that it need be unanimous only in finding that the State had proved beyond a reasonable doubt that Welch had *622 committed at least one of the unlawful acts described in the instructions. Therefore, it is possible that at least one juror could have found that although Welch exercised due care with a pedestrian as described in instruction No. 6(B), she did not, however, meet the higher standard of exercising proper precaution with an obviously confused or incapacitated person as described in instruction No. 6(C) and then based his or her decision to convict on the basis described in instruction No. 6(C). Because the jury was given an improper basis upon which to convict Welch and was not required to specify the basis or bases on which it found Welch guilty, we conclude that subparagraph (C) was prejudicial to Welch. Therefore, the erroneous instruction requires reversal of her conviction.

Double Jeopardy Does Not Bar New Trial on Other Bases.
[11] Welch was charged with motor vehicle homicide which involves causing a death unintentionally while engaged in an unlawful act involving the operation of a motor vehicle. See § 28-306. The State alleged alternate "unlawful acts" as the basis for the charge. Such acts included careless driving, failure to yield, failure to exercise due care with a pedestrian, and failure to exercise proper precaution with an obviously confused or incapacitated person. We conclude that although Welch cannot be retried for motor vehicle homicide on the basis that she failed to exercise proper precaution with respect to an obviously confused or incapacitated person, double jeopardy does not prevent a new trial for motor vehicle homicide on the remaining bases upon which the county court instructed in the first trial.
[12] We have noted that generally, "if a convicted defendant obtains a reversal and remand for a new trial on appeal, the State may reprosecute." State v. Palmer, 257 Neb. 702, 726, 600 N.W.2d 756, 774 (1999). However, "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." 257 Neb. at 727, 600 N.W.2d at 775 (citing Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)).
In the present case, our conclusion that Welch's conviction should be reversed is premised on our determination that there was not sufficient evidence at trial to support instruction No. 6(C) regarding the duty of a driver to exercise proper precaution with an obviously confused or incapacitated person and that at least one juror could have relied on that unwarranted basis and corresponding instruction in voting to convict Welch. Because the State failed to produce evidence to support a conviction on the basis of Welch's alleged failure to exercise proper precaution with an obviously confused or incapacitated person, double jeopardy precludes the State on remand from attempting to convict Welch of motor vehicle homicide on the basis of such alleged unlawful act. However, as noted above, there was sufficient evidence from which the jury could have found that Welch failed to exercise due care with a pedestrian as instructed in instruction No. 6(B), and she may be retried on such basis. Further, Welch made no argument on appeal that the evidence was insufficient to support the instructions on careless driving in instruction No. 4 and on failure to yield the right of way in instruction No. 5, and we have not analyzed these instructions and corresponding evidence. Therefore, on remand, Welch may be tried on these bases without violating double jeopardy.

CONCLUSION
We conclude that the evidence did not support instruction No. 6(C) regarding *623 failure to exercise proper precaution with an obviously confused or incapacitated person. The county court therefore erred in giving the instruction, and the instruction was prejudicial to Welch. The district court erred in affirming Welch's conviction. We remand the cause to the district court with directions to reverse Welch's conviction and to remand the matter to the county court for a new trial in accordance with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.