769 N.W.2d 366 (2009)
278 Neb. 212
STATE of Nebraska, appellee,
v.
Andre D. ROBINSON, appellant.
No. S-08-433.
Supreme Court of Nebraska.
July 31, 2009.
*368 Thomas J. Garvey, Bellevue, for appellant.
Jon Bruning, Attorney General, and Kimberly A. Klein, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
Andre D. Robinson appeals his conviction and sentence for knowing or intentional child abuse resulting in death. Robinson asserts primarily that there was insufficient evidence to support his conviction and that his sentence of life imprisonment imposed by the district court for Douglas County is excessive. We affirm Robinson's conviction and sentence.

STATEMENT OF FACTS
Late in the afternoon of November 24, 2006, 22-month-old Branesha Thomas was brought into a hospital emergency room in Omaha, Nebraska, by her mother, Tanisha Turner, and Robinson. Turner was a girlfriend of Robinson's, but Robinson was not Branesha's father. When Branesha was brought into the emergency room, she was not breathing and she had multiple bruises on her head, face, and chest. Robinson told emergency room personnel that Branesha had fallen off her bed earlier in the day and seemed to be doing fine but that later that afternoon, she stopped breathing. Lifesaving measures were attempted, but Branesha could not be revived.
Police detective Marlene Novotny arrived at the hospital to investigate the circumstances of Branesha's death. Robinson had left the hospital by the time Novotny arrived, but Novotny spoke to Turner. Novotny asked Turner what had happened during the day, and Turner provided little detail other than to say that she had spent the day with a person named "Eric" and that they had gone to *369 the Chuck E. Cheese's and Burger King restaurants. Novotny continued her investigation by obtaining security video from the hospital to determine who brought Branesha to the hospital.
Novotny interviewed Turner again the next day. Turner told Novotny that she had lied about her whereabouts on the previous day; that she had actually spent the afternoon with her friend, Raeven Ammons; and that she had left Branesha with Robinson during that time. Turner identified Robinson as the man in photographs taken from the hospital security video that showed Robinson carrying Branesha into the hospital. Turner agreed to make a recorded telephone call to Robinson to discuss the events of the previous day.
In the call, Turner asked Robinson what had happened to Branesha. Robinson told Turner that Branesha fell off a bed on which she had been jumping. He denied that he hit her or otherwise caused the bruising. Robinson said that Branesha threw up after she fell but that she later went with Robinson and his daughter to Chuck E. Cheese's and to Burger King and that she ate some food. Robinson said that Branesha appeared to be fine until she fell asleep in Robinson's car on the way to pick up Turner. Robinson asked Turner whether she told her mother and police investigators that she had been with him or whether she told them she was with "Eric," as they had agreed. Robinson indicated concern that there might be child abuse charges and that he did not want to say that Turner was not with Branesha during the day; instead, he wanted to say that both he and Turner were with her when she fell.
Robinson was later arrested and charged with knowing or intentional child abuse resulting in death, a Class IB felony under Neb.Rev.Stat. § 28-707(6) (Reissue 2008).
At trial, Turner testified as follows: On November 24, 2006, Robinson called her and said that he wanted to take Branesha and his daughter to Chuck E. Cheese's. Robinson picked up Turner and Branesha at around 1:30 p.m. He dropped Turner off at her friend Ammons' home, and Branesha stayed with Robinson. Turner spent the afternoon with Ammons. During that time, Turner received three telephone calls from Robinson. In the first call, Robinson told Turner that Branesha had been jumping on the bed and fell off the bed but that she was doing fine. In the second call, Robinson told Turner that Branesha had thrown up but that she was still doing fine. In the final call, Robinson told Turner that he was coming to Ammons' house to pick her up.
Turner further testified that Robinson arrived to pick her up at around 5:30 p.m. When Turner went to the car, Ammons came with her to see Branesha. Branesha appeared to be sleeping; Ammons tried to wake her but could not. Ammons went back into her house, and Robinson and Turner drove away. Turner noticed that Branesha still appeared to be sleeping, and Robinson told her that she had been sleeping and would not wake up since they had set out to pick Turner up. Turner tried to wake Branesha, but she did not respond. Turner realized that something was wrong with Branesha when she felt that her hand was cold, and she asked Robinson what had happened. He responded that nothing had happened and that Branesha was fine and was just sleeping. Turner told Robinson to take her to the hospital; when they arrived, Robinson carried Branesha into the emergency room. Robinson stayed with Turner at the hospital for about 30 minutes but left before Turner's mother and grandmother arrived. After being at the hospital for a while longer, Turner was informed that Branesha had died.
*370 Turner testified that when she was questioned by police at the hospital, she had lied when she told them that she and "Eric" had been with Branesha all day, because she did not want her mother, who did not approve of her relationship with Robinson, to know that she had left Branesha with Robinson. When she talked with police the next day, she decided to tell the truth, because she realized that something had happened while Branesha was with Robinson.
Ammons testified at trial that around 1 or 2 p.m. on November 24, 2006, she received a call from Turner, who wanted to come for a visit. Robinson dropped Turner off about a half hour later. Turner spent the afternoon with Ammons and received some telephone calls during that time. When Robinson came to pick Turner up later in the afternoon, Ammons went to the car to see Branesha and noticed that although Branesha's eyes were open, "her face was just blank." Ammons shook Branesha, but she did not respond. Ammons told Turner and Robinson that something was wrong with Branesha.
Turner's mother, Wanda Wilson, testified at trial that Turner and Branesha lived with her and that on the morning of November 24, 2006, she saw Branesha and did not observe any injuries. Wilson went shopping at around 1 p.m., and at around 2 p.m., she received a call from Turner saying that she and a friend were taking Branesha to Chuck E. Cheese's. Wilson did not hear from Turner again until around 6 p.m. when she was called to the hospital, where Wilson later learned that Branesha had died. Wilson was allowed to see Branesha's body, and she observed bruises on Branesha's head and chest that had not been there that morning.
Novotny, the police detective who questioned Turner on November 24 and 25, 2006, testified at trial regarding her investigation. During her testimony, the State offered into evidence the tape recording and a transcript of the November 25 telephone conversation between Turner and Robinson. The tape recording was played for the jury, and jurors were provided a transcript and allowed to read along as the tape recording was played.
Other witnesses called by the State included a nurse and a paramedic who were on duty when Branesha was brought into the emergency room. The State also presented the testimony of a forensic pathologist who performed an autopsy on Branesha's body. The pathologist observed multiple bruises, abrasions, and contusions on her head, chest, and abdomen, as well as a fractured rib and a fractured humerus bone. The pathologist opined that the injuries were caused by blunt force trauma. The pathologist also observed that there had been significant hemorrhaging in the brain and opined that the hemorrhage was caused by recent severe head trauma. The pathologist observed hemorrhaging in other internal organs, including the liver, pancreas, and heart. The pathologist noted that the stomach was empty, which would be inconsistent with her having eaten food a couple hours earlier unless she had vomited after eating such food. The pathologist opined in conclusion that the cause of Branesha's death was trauma to the head and abdomen and the resulting loss of blood and, further, that the injuries could not have been the result of a single fall from a bed.
Finally, the State presented the testimony of a pediatric physician who reviewed photographs and the post mortem examination report on Branesha. The pediatric physician opined that her injuries were nonaccidental; that immediately after sustaining such injuries, a "child would be inconsolable, would be screaming, crying," and "as a caregiver, you would be panicked *371 to witness this child"; and that a child would have gone unconscious "at the most 15 to 20 minutes" after sustaining such injuries. The physician further opined that the injuries could not have been the result of a single fall from a bed and instead were caused by multiple instances of blunt trauma such as punching or kicking. The physician opined in conclusion that after a child received such injuries, a reasonable caregiver would not be able to say that the child was in a normal condition and that if the child had received medical attention immediately after receiving the injuries, the child's life could possibly have been saved.
After the State rested its case, Robinson moved for dismissal on the basis that the State failed to prove its case. The court denied the motion.
Robinson testified in his own defense. He testified that on the morning of November 24, 2006, he spoke with Turner and that she stated she planned to have Ammons babysit Branesha and then would spend the night with Robinson. Robinson next spoke with Turner shortly after noon, and she told him that he could pick her up because her mother had left. Robinson picked up Turner around 1:30 p.m., and Turner brought Branesha with her. The three went to Robinson's apartment, where Robinson allowed Branesha to play with some of his daughter's toys. Robinson testified that Turner was with him and that he was never alone with Branesha. At one point, Turner called to Robinson from another room and told him to bring in some paper towels because Branesha had thrown up. Around 3 p.m., Robinson took Turner and Branesha to Ammons' house and left them both there. Robinson testified that there was no plan for him to take Branesha to Chuck E. Cheese's and that instead, the plan was that Turner would spend time at Ammons' house before returning to his apartment for the night, leaving Branesha with Ammons. Robinson testified that he and Turner did not want her mother to know that she was with him, because Turner's mother did not approve of him.
Robinson testified that he next spoke to Turner when he called after 5 p.m. to see if she was ready for him to pick her up. She was, and he went to Ammons' house to pick her up. When he arrived, Turner and Ammons both came out and Ammons was carrying Branesha, who appeared to be sleeping. Turner told Robinson that Ammons would not be able to watch Branesha and that she would try to find another baby-sitter. As they drove to Robinson's home, Turner stated that Branesha was not breathing. Robinson attempted to wake her, but she did not respond, and so he drove her to the hospital. On the way to the hospital, he asked Turner what had happened and she said that Branesha had fallen and hit her head at Ammons' house. Robinson testified that Turner asked him to say that he had taken Branesha and his daughter to Chuck E. Cheese's, because Turner was worried that she would be in trouble if it was learned that she allowed Branesha to fall and hit her head.
Robinson testified that at the hospital, he decided that Turner's mother should be called. Turner asked him not to identify himself to her mother because of her mother's dislike for him and instead to say that his name was "Eric." Robinson testified that Turner asked him to leave the hospital before her mother arrived and that he complied. Turner called him the night of November 24, 2006, and told him that Branesha had died and that the police were investigating her for child neglect. Turner asked him to tell anyone who questioned him that Branesha was with him and not with Turner when she fell. Robinson agreed to tell the police whatever Turner *372 wanted him to say. Robinson testified that Turner asked him to stick with that story the next time she called him and that that was the reason he said the things he did during the telephone conversation on November 25.
Robinson also presented the testimony of Robert Louis Butler, a police officer who took part in the investigation of Branesha's death. Robinson questioned Butler regarding, inter alia, an interview Butler conducted of Robinson during the investigation. Butler testified, inter alia, that during the interview, Robinson admitted that he had accidentally kicked Branesha.
At the jury instruction conference, the State objected "to giving the instruction on the jury making a finding of free and voluntariness" because the State "did not offer the statement; the defense did." Robinson's counsel stated that he did not object, and the court therefore stated that the instruction would be removed. The record on appeal does not contain instructions that were proposed but not given, and there is no other indication in the record of the content of the instruction referred to above or of the specific statement or statements to which it pertained.
During jury deliberations, the jury foreperson sent a question to the court regarding instruction No. 4, which set forth the elements of the crime of knowing or intentional child abuse resulting in death. Paragraph A(1) of the instruction required that in order for the jury to find Robinson guilty, the State must prove, inter alia, that Robinson "did cause or permitted Branesha ... to be placed in a situation that endangered her life or health or to be deprived of necessary care." The jury foreperson asked, "Can we conclude that the insertion of `or' in the second to last line of the statement indicates that only depriving of necessary care is needed to meet the criteria of (1)?" The court held a hearing with counsel for the State and Robinson present and stated on the record that counsel for both parties "agreed that the question should be answered with the word `yes.'" Counsel for both parties agreed on the record that such statement was accurate, and the court stated that the jury would be given a supplemental instruction that the answer to the question was "yes." The supplemental instruction does not appear to have been given orally to the jury on the record; instead, it appears that the supplemental instruction was given to the jury in written form.
Shortly thereafter, the jury indicated that it had reached a verdict. The jury entered a unanimous verdict that Robinson was guilty of knowing and intentional child abuse resulting in death. The court subsequently imposed a sentence of imprisonment for life.
Robinson filed a notice of appeal. The district court granted Robinson's request for new counsel on appeal.

ASSIGNMENTS OF ERROR
Robinson asserts that (1) there was not sufficient evidence to support his conviction, (2) he received ineffective assistance of counsel because trial counsel failed to object to the removal of the instruction regarding voluntariness of statements, (3) the district court erred in giving the supplemental instruction in response to the jury's question, and (4) the district court imposed a sentence that was excessive and disproportionate to the crime and that constituted cruel and unusual punishment.

STANDARDS OF REVIEW
When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential *373 elements of the crime beyond a reasonable doubt. State v. Branch, 277 Neb. 738, 764 N.W.2d 867 (2009). Regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court, in reviewing a criminal conviction, does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Id.
A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. The determining factor is whether the record is sufficient to adequately review the question. State v. Davis, 276 Neb. 755, 757 N.W.2d 367 (2008). If a matter has not been raised or ruled on at the trial level and requires an evidentiary hearing, an appellate court will not address the matter on direct appeal. Id.
Whether jury instructions given by a trial court are correct is a question of law. State v. Welch, 275 Neb. 517, 747 N.W.2d 613 (2008). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. Id. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. Id.
Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. State v. Branch, supra.

ANALYSIS

There Was Sufficient Evidence to Support Robinson's Conviction for Knowing or Intentional Child Abuse Resulting in Death.
Robinson first asserts that the evidence was not sufficient to support his conviction for knowing or intentional child abuse resulting in death. We conclude that the evidence was sufficient.
Robinson was convicted of a violation of § 28-707, which provides that a person is guilty of child abuse "if he or she knowingly, intentionally, or negligently causes or permits a minor child to be ... [p]laced in a situation that endangers his or her life or physical or mental health [or to be d]eprived of necessary ... care." Subsection (6) of the statute provides that child abuse is a Class IB felony "if the offense is committed knowingly and intentionally and results in the death of such child." In this case, the State charged in the information that Robinson committed the offense knowingly and intentionally and that the offense resulted in Branesha's death.
Through the testimonies of Turner, Turner's mother, and Ammons, the State presented evidence that Branesha was in Robinson's sole care on the afternoon of November 24, 2006, that she showed no sign of injury prior to the time she was in his sole care, and that Branesha suffered injuries during the time she was in his sole care. Through the testimonies of medical personnel who treated or examined Branesha, the State also presented evidence that Branesha suffered injuries such that it would have been obvious to any person caring for her that she needed immediate medical attention, that such injuries were not incurred as a result of a fall from a bed but instead as a result of multiple instances of blunt trauma such as kicking or punching, and that Branesha was denied medical care long enough that she died when, if timely treatment had been provided, she might have survived.
There was evidence that Robinson admitted to Butler that he accidentally kicked Branesha. In addition, evidence *374 that Branesha was in Robinson's sole care during the time she suffered injuries was circumstantial evidence from which the jury could have inferred that he caused the injuries. See State v. Leibhart, 266 Neb. 133, 662 N.W.2d 618 (2003) (evidence that defendant was sole adult in child's presence at time child sustained injuries was sufficient circumstantial evidence supporting finding that defendant caused injuries). The jury could have inferred that Robinson placed Branesha in a situation that endangered her life or health when he either inflicted the injuries or allowed the injuries to be inflicted on her, or the jury could have found that Robinson deprived Branesha of necessary care based on evidence that her injuries were such that a reasonable person would have known she needed immediate medical attention. Either finding would support a conviction for child abuse under § 28-707. The evidence, including the pediatric physician's testimony that Branesha's injuries were nonaccidental, also supported findings that the abuse was knowing or intentional and that the abuse resulted in Branesha's death, making the offense a Class IB felony under § 28-707(6). Because there was evidence to support such findings, the evidence presented by the State supports Robinson's conviction for knowing or intentional child abuse resulting in death.
Robinson argues that the evidence was not sufficient, because the strongest evidence against him was faulty in certain respects. He asserts that the most important pieces of evidence against him were his two "confessions"his admission to Butler that he accidentally kicked Branesha and his statements in the recorded telephone call with Turner in which he admitted that Branesha was alone with him during the afternoon of November 24, 2006. These statements support a finding of guilt. Robinson does not argue that these statements do not support his conviction but instead argues that the court should have instructed the jury to consider whether such statements were voluntary. This argument is considered below in connection with Robinson's second assignment of error claiming ineffective assistance of counsel wherein we conclude the record on direct appeal is not sufficient to evaluate the claim.
Robinson further argues that other than his own statements, the main evidence against him was the testimony of Turner and Ammons, and he asserts both were "admitted liar[s]." Brief for appellant at 19. He notes that Turner admitted that she lied in her first statements to police after Branesha's death and that she lied to her mother by denying that she was spending time with Robinson. Robinson notes that Ammons admitted that at times she had lied by providing an alibi for Turner when Turner was spending time with Robinson. Robinson urges this court to "simply admit the incredulity of [Turner's] and [Ammons'] stor[ies]." Id.
We have stated that the credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review. State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007). If the jury believed Turner's and Ammons' testimony, such evidence supported Robinson's conviction. Although there was also evidence which might have called each witness' credibility into question, that assessment was for the jury. Viewing the evidence in the light most favorable to the State, it is clear that the jury believed Turner's and Ammons' testimony and did not believe Robinson's testimony on matters where their testimonies were in conflict. When reviewing a criminal conviction for sufficiency of the evidence, we, as an appellate court, do not pass on the *375 credibility of witnesses, see State v. Branch, 277 Neb. 738, 764 N.W.2d 867 (2009). Including the testimonies of Turner and Ammons, the jury, as the trier of fact, could reasonably have found the essential elements of knowing or intentional child abuse resulting in death beyond a reasonable doubt based on the evidence.
We conclude that the evidence was sufficient to support Robinson's conviction for knowing or intentional child abuse resulting in death.

The Record on Direct Appeal Is Not Sufficient to Review Robinson's Claim of Ineffective Assistance of Counsel.
Robinson next asserts that he received ineffective assistance of counsel. Robinson argues that he was provided ineffective assistance when his trial counsel failed to object after the State asked the court not to give a proposed instruction that the jury should decide whether any confession Robinson made was made knowingly and voluntarily. Because the proposed instruction is not included in the record on appeal, we conclude that we cannot review Robinson's claim of ineffective assistance of counsel in this direct appeal.
We have stated that we need not dismiss an ineffective assistance of counsel claim merely because a defendant raises it on direct appeal. State v. Wabashaw, 274 Neb. 394, 740 N.W.2d 583 (2007). The determining factor is whether the record is sufficient to adequately review the question. Id. If it requires an evidentiary hearing, we will not address the matter on direct appeal. Id.
We note that the proposed instruction that is the subject of Robinson's claim of ineffective assistance of counsel is not included in the record on appeal. The only indication in the record suggesting the content of the instruction is a statement at the instruction conference made by the prosecutor that the State objected "to giving the instruction on the jury making a finding of free and voluntariness." Robinson concedes on appeal that the proposed instruction is not in the record but argues that we must assume that the proposed instruction was based on the standard jury instruction on voluntary statements (NJI2d Crim. 6.0). We are not prepared to make this assumption. Further, because the proposed instruction is not included in the record, we cannot be certain what statement or statements by Robinson were the subject of the instruction, and we therefore cannot determine whether Robinson was prejudiced by his counsel's purported failure to object to the removal of the instruction. Finally, it is possible that defense counsel had a strategic reason for not objecting to removal of the instruction and such reasoning cannot be evaluated without an evidentiary hearing.
We conclude that the record on direct appeal is not sufficient to adequately review Robinson's claim of ineffective assistance of counsel.

The Supplemental Jury Instruction Was a Correct Statement of Law, and Robinson Was Not Prejudiced by the Giving of the Instruction.
Robinson next asserts that the district court erred in giving a supplemental instruction in response to the jury's question regarding the instruction on the elements of the crime charged. We conclude that the instruction was a correct statement of the law and that Robinson was not prejudiced by the giving of the instruction.
During jury deliberations, the jury foreperson sent a question to the court regarding the instruction that set forth the elements of knowing or intentional child abuse resulting in death. The instruction stated that in order for the jury to find *376 Robinson guilty, the State must prove, inter alia, that Robinson "did cause or permitted Branesha ... to be placed in a situation that endangered her life or health or to be deprived of necessary care." The jury foreperson asked, "Can we conclude that the insertion of `or' in the second to last line of the statement indicates that only depriving of necessary care is needed to meet the criteria of (1)?" After consulting with counsel for both the State and Robinson, the court provided a supplemental instruction to the jury stating that the answer to the question was "Yes."
Robinson argues on appeal that the court should have refused to give a supplemental instruction, because the original instruction was a correct and adequate statement of law and did not need expansion. Robinson also argues that under Neb.Rev. Stat. § 25-1116 (Reissue 2008), the proper procedure would have been to call the jury into open court and to tell it that it had been given all the law necessary and that it should base its decision on that law.
In State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007), the trial court informed the State and the defendant in a telephonic hearing of questions asked by the jury and of the court's proposed responses. On appeal, we noted that the defendant in Gutierrez failed to show how he was prejudiced by the procedure used by the court for responding to the jury's question. With regard to the defendant's objection to the substance of the supplemental instruction, we noted in Gutierrez that the same standards regarding an alleged erroneous jury instruction apply to a supplemental instruction. That is, "the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant." 272 Neb. at 1024, 726 N.W.2d at 569.
We note in this case that Robinson's counsel did not object to the procedure and that counsel did not object to the content of the instruction, but instead agreed that it was correct. Robinson does not frame this assignment of error as ineffective assistance of counsel, and he does not appear to argue that the supplemental instruction misstated the law. Instead, he argues that the supplemental instruction was unnecessary because the original instruction adequately stated the law. He argues that he was prejudiced because the jury reached its verdict shortly after it received the supplemental instruction; therefore, he argues, the supplemental instruction prompted the jury to reach a verdict to convict.
Even though the supplemental instruction may have assisted the jury in reaching its decision, Robinson has not shown that the instruction was prejudicial or otherwise adversely affected his substantial rights. The supplemental instruction, when read with the other jury instructions as a whole, was a correct statement of law and was not misleading, and the fact that it assisted the jury in reaching its verdict does not mean that it caused the jury to reach its finding of guilt. The instruction was not prejudicial.
Robinson has not shown that he was prejudiced by the supplemental instruction or by the procedure used by the court to respond to the jury's question. We therefore conclude that the court did not err in giving the supplemental instruction.

The Sentence Imposed by the District Court Was Not Excessive and Was Not Cruel and Unusual Punishment.
Finally, Robinson challenges his sentence in four assignments of error that he argues as two and that we consider together. He asserts that (1) the court imposed an excessive sentence because it did not properly consider factors set forth *377 in case law and (2) the sentence constituted cruel and unusual punishment because it was disproportionate to the crime. We conclude that the sentence was not excessive and that it did not constitute cruel and unusual punishment.
Robinson argues first that his sentence of life imprisonment is excessive because he is a young man and the sentence imposed on him gives him no opportunity to rehabilitate himself. He notes that his criminal history was not extensive and included no prior felony convictions. He also argues that the court should have given him favorable consideration because although he had a difficult childhood, he avoided joining a gang or becoming involved in chemical dependency.
A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. State v. Kinkennon, 275 Neb. 570, 747 N.W.2d 437 (2008). Robinson was convicted of knowing or intentional child abuse resulting in death, which is a Class IB felony under § 28-707(6). A Class IB felony is punishable by a sentence of imprisonment for a minimum of 20 years to a maximum of life. Neb.Rev.Stat. § 28-105 (Reissue 2008). Therefore, Robinson's sentence is within statutory limits.
The State argues that although Robinson's criminal history did not include prior felonies, it is a lengthy history and shows "a pattern of utter disregard for the law." Brief for appellee at 28. The State also notes that although Robinson did not test high for susceptibility to drugs and alcohol, he tested in the high to very high risk category for criminal behavior, antisocial behavior, and procriminal attitude. The State also emphasizes the nature of the crime for which Robinson was convicted the beating and brutalization of a small childand argues that any redeeming qualities Robinson may have pale in comparison to such a crime.
At the sentencing hearing, the court also focused on the nature of the crime. The court noted that the testimony of the pathologists regarding the nature and extent of Branesha's injuries indicated that she suffered and that the injuries were not the result of an accident or a single blow, but instead "several strikes" involving "a horrific amount of force consistent with kicks or punches as if the baby were stomped on." The court also noted that Robinson accepted no responsibility for the crime and concluded that any sentence "less than the maximum allowed by law would promote disrespect for the law and depreciate the seriousness of the offense."
Given the reasons set forth by the State and by the district court, we conclude that the sentence of life imprisonment was not an abuse of discretion.
Robinson separately argues that his sentence is disproportionate to the crime and therefore violates federal and state constitutional prohibitions against cruel and unusual punishment. Robinson compares his case to other cases that he argues involved similar crimes but in which the defendant was given a less severe sentence. Although Robinson casts his arguments in constitutional terms of cruel and unusual punishment, we find that the arguments are in substance the same as his claims of an excessive sentence.
Robinson does not attack the facial validity of § 28-707(6), which designates that the crime of knowing or intentional child abuse resulting in death is a Class IB felony, or of § 28-105, which provides that a Class IB felony is punishable by a sentence of imprisonment for a minimum of 20 years to a maximum of life. He makes no substantive argument that the designated range of punishment, including the maximum punishment of life imprisonment, is *378 so disproportionate to the crime of knowing and intentional child abuse resulting in death that the statutes on their face violate the constitutional prohibitions against cruel and unusual punishment. Because Robinson does not make a facial challenge to the statute, his argument must be understood as a challenge to the statutes "as applied" to him.
In a facial challenge, the defendant would argue that the range of punishments assigned to a particular crime is disproportionate to the range of actions that would meet the statutory definition of the crime. However, in an "as applied" challenge, like that advanced by Robinson in this case, the defendant does not argue that the range of punishment is disproportionate to the crime in general, but instead argues that his or her specific punishment is disproportionate to his or her specific crime. See State v. Brand, 219 Neb. 402, 404, 363 N.W.2d 516, 518 (1985) (distinguishing between cruel and unusual punishment challenge "directed to the claim that the statute is unconstitutional by its terms" and argument that "as applied in this particular case," sentence violates cruel and unusual punishment clauses of U.S. and Nebraska Constitutions). We conclude that Robinson's "as applied" challenge based on the cruel and unusual punishment clauses involves the same considerations as his excessive claim. In both challenges, he argues that his specific sentence is disproportionate to the specific circumstances of his crime. For reasons discussed above, wherein we concluded that Robinson's sentence was not excessive, we also conclude that his sentence was not so disproportionate to his crime as to constitute cruel and unusual punishment.
We conclude that the sentence imposed by the district court was not excessive and did not constitute cruel and unusual punishment.

CONCLUSION
We conclude that the evidence was sufficient to support Robinson's conviction for knowing or intentional child abuse resulting in death, that the record on direct appeal is not sufficient to review Robinson's claim of ineffective assistance of counsel, that Robinson was not prejudiced by the supplemental instruction to the jury, and that the sentence imposed by the district court was not excessive and did not constitute cruel and unusual punishment. We therefore affirm Robinson's conviction and sentence.
AFFIRMED.