adjudication order concerning Moses and Elijah and remand the cause with directions to dismiss the petition as to Moses and Elijah. As conceded by the parties, we affirm the adjudication order of the juvenile court as to Sylissa and Justine.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

_____

STATE OF NEBRASKA, APPELLEE, V.
ERIC O. ROCHA, SR., APPELLANT.
___ N.W.2d ___

Filed July 19, 2013.    No. S-12-411.

1. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.

2. ____: ____. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.

3. ____: ____. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

4. **Appeal and Error.** Absent plain error, an appellate court ordinarily will not address an issue that was not raised in the trial court.

5. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** Ineffective assistance of counsel claims are generally addressed through a postconviction action. This is frequently because the record is insufficient to review the issue on direct appeal.

6. **Effectiveness of Counsel: Postconviction.** Where no plausible explanation for an attorney's actions exists, to require the defendant to file a postconviction action can only be a waste of judicial time.

7. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

8. ____: ____. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

9. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

10. **Effectiveness of Counsel: Appeal and Error.** In addressing the "prejudice" component of the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court focuses on whether a trial counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.

11. **Trial: Joinder.** Offenses are properly joinable under Neb. Rev. Stat. § 29-2002(1) (Reissue 2008) if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

12. ____: ____. Charges arise out of the same act or transaction if they are so closely linked in time, place, and circumstance that a complete account of one charge cannot be related without relating details of the other charge.

13. **Trial: Joinder: Evidence.** To be part of the same act or transaction, there must be substantially the same facts; i.e., one charge cannot be proved without presenting evidence of the other charge.

Appeal from the District Court for Scotts Bluff County: Leo Dobrovolny, Judge. Reversed, sentences vacated, and cause remanded for further proceedings.

James R. Mowbray and Todd W. Lancaster, of Nebraska Commission on Public Advocacy, for appellant.

Jon Bruning, Attorney General, and Stacy M. Foust for appellee.

Wright, Connolly, Stephan, Miller-Lerman, and Cassel, JJ., and Riedmann, Judge.

Per Curiam.

# I. NATURE OF CASE

Eric O. Rocha, Sr., was convicted of first degree sexual assault of a child and four counts of child abuse. In this direct appeal, Rocha claims trial counsel was ineffective in failing to move to sever the sexual assault charge from the child abuse charges and in failing to request an instruction limiting the jury's consideration of the evidence of one crime to that particular crime. He also alleges trial error in failing to instruct the jury on the lesser-included offense of negligent child abuse and in failing to instruct the jury on the defense of parental justification of use of force. For the reasons set forth, we reverse the

judgments of conviction, vacate the sentences, and remand the cause for further proceedings.

## II. FACTS

On March 8, 2011, an officer with the Nebraska State Patrol conducted an interview of J.S., a young girl, who was 8 years old at the time of trial. After the interview, the officer obtained a search warrant for Rocha's residence in Scottsbluff, Nebraska. At the residence, a slipper and a belt were retrieved and photographs were taken of the residence, including a photograph of a bedroom door which could be locked from the outside of the room.

Rocha was charged with one count of first degree sexual assault of a child and four counts of felony child abuse. J.S. was the alleged victim of the sexual assault and one of the alleged victims of child abuse. Her three brothers, J.C., A.R., and A.S., were the other alleged child abuse victims. A second amended information alleged that Rocha committed sexual assault from October 14, 2009, through February 2011 and that Rocha committed child abuse from June 11, 2008, through February 2011.

At trial, the evidence showed that Rocha and Jessica S. were married and lived together. J.S., J.C., A.R., and A.S. are Jessica's children, but Rocha is not their biological father. He supervised the children while Jessica was at work and the children were at home.

J.S. testified that during the evenings, Rocha came into her bedroom, which she shared with her brothers. He took her into the living room and forced her to perform oral sex. She gave her story as to what occurred during the assaults. The assaults allegedly occurred in the living room, in her mother's bedroom, in the bathrooms, and in the car.

In the car, Rocha allegedly made J.S. sit on his lap with her pants and underwear partially off. Rocha's "private area" went "in [her] bottom," and she said that hurt. Rocha also allegedly touched her vaginal area with his finger.

J.S. claimed Rocha hit her with a slipper on her arm. She claimed Rocha hit her bottom with a belt, which hurt. Rocha also blew marijuana smoke into her mouth. She said she did

not get enough to eat at dinner because the children did not get "seconds." She said that on one occasion, Rocha made her drink beer and then made her perform oral sex.

J.S. was afraid of Rocha because he hurt her brothers. She said Rocha choked A.R. by "dragging him up in the wall" with his hands around his throat. She also saw Rocha push his fingernail into A.R.'s ear. Rocha spanked A.R. and A.S. with the belt and the slipper. And J.S. saw Rocha choke A.S. in the bathroom.

J.C. explained that the bedroom he shared with J.S., A.R., and A.S. locked from the outside and that sometimes the boys were locked in the bedroom while J.S. was in the living room with Rocha. J.C. testified he did not always get enough food to eat. He saw Rocha smoke something green in color, and the smoke hurt the boys' eyes.

Rocha did not hit J.C., but J.C. saw Rocha hit the other children. Rocha spanked J.S. with his hand, sometimes with her pants down. Rocha spanked A.R.'s bottom with his hand or with a sandal. Rocha also hit A.R.'s bottom and hands with a wooden stick and hit A.R.'s bottom with the tube of a vacuum cleaner. He made A.R. stand in a corner, and one time, J.C. saw Rocha push A.R.'s head into the wall, giving A.R. a bloody nose. On another occasion, Rocha threw A.R. across the kitchen floor. He "thump[ed]" A.R. on the head with his finger or a wooden spoon. Rocha hit A.R. on his side if he was not behaving. J.C. testified that Rocha spanked A.S. with his hand, but never used anything else to hit A.S.

J.S.' kindergarten teacher testified that until November 2009, J.S. was a "bubbly" 5-year-old, who then became very agitated and nervous, cried a lot, and did not want to go home. J.S. refused to take an art project home. The teacher explained that J.S. wanted to be perfect in doing everything at school and would erase her papers repeatedly. When coloring, J.S. was afraid to go outside the lines. She would cry at school because she was hungry or afraid to go home. The teacher gave J.S. and the other students in the class snacks twice a day to address J.S.' hunger. J.S. was frightened and uneasy when she talked with the teacher about her home. She was afraid to go home if her new shoes were dirty, so she

"spit clean[ed]" them. After the teacher observed this behavior, she helped J.S. clean her shoes with a rag, and did so regularly after J.S. sobbed for fear she would get in trouble at home.

J.S.' kindergarten teacher said that toward the end of November 2009, J.S. used the bathroom 15 or 20 times each day to wash her hands, arms, legs, hair, and face. The teacher testified that this behavior was different for J.S. and unusual for any kindergarten student. J.S.' first grade teacher during the 2010-11 school year also testified to similar behavior.

A licensed medical health practitioner and certified professional counselor, Jeanna Townsend, provided therapy to J.S. 5 times in February 2010 and approximately 14 times beginning in June 2011. During her five sessions with J.S. in 2010, J.S. did not answer questions and "shut down." Townsend testified that child victims of sexual abuse exhibit certain behaviors. These include taking responsibility for many things and feeling that they are bad or dirty. Townsend stated that constant washing of body parts was consistent with sexual abuse because the child tends to feel dirty. Excessive use of the bathroom was consistent with sexual abuse. Townsend testified to other activities that could be consistent with sexual abuse.

The children's mother, Jessica, testified Rocha disciplined the children by sending them to their room, giving them a "time out," or not letting them go outside to play. She did not see any marks or bruises on the children that caused concern that the children were improperly disciplined, and she did not see Rocha hit A.R. or A.S. on the head with a wooden spoon during mealtime. She did not hear any complaints from the children that Rocha spanked or treated them inappropriately; hit them with a belt, stick, or sandal; or choked them. But Jessica admitted she found little bruises on the children after Rocha had been alone with them and stated she had concerns about how Rocha treated the children.

Jessica did not expose J.S. to anything sexual, and Jessica claimed J.S. did not tell her that she was sexually abused by Rocha. She said J.S. had an imagination and made up stories. Jessica said she did not see Rocha smoke marijuana in the

home and did not find or smell marijuana in the home. She denied that the children were deprived of food at dinner.

Rocha denied the allegations of sexual assault and child abuse. He denied taking J.S. to the living room or exposing himself to her. He denied having done anything to J.S. for sexual gratification.

Rocha said he disciplined J.S., A.R., and A.S. by scolding them, yelling at them, giving them "timeouts," and sending them to their room. He said he spanked them with an open hand on the bottom but denied pinching, choking, hitting them in the face, or striking them with anything other than his hands. Rocha disciplined J.C. by "grounding" him. He denied using marijuana in front of the children, offering it to the children, or forcing them to consume it. He said that he and Jessica made them meals and that the children were not denied food.

After the evidentiary portion of the trial, Rocha's counsel requested that a proposed jury instruction on the term "cruel punishment" be given to the jury. The court denied the instruction. It determined the instruction was not necessary to accurately state the law. During its rebuttal argument, the State asserted that J.S. had been "absolutely honest in everything she told [the jury] that happened."

The jury found Rocha guilty on all counts. He was sentenced to prison for 40 years to life on the sexual assault conviction, with credit for 264 days served, and 3 to 5 years on each child abuse conviction. All sentences were to run consecutively. He appealed. This court has a statutory obligation to hear all appeals in cases in which the sentence of life imprisonment is imposed.[1]

## III. ASSIGNMENTS OF ERROR

Rocha assigns, summarized and restated, that (1) his trial counsel was ineffective in failing to move to sever the sexual assault charge from the child abuse charges, (2) his trial counsel was ineffective in failing to request a limiting instruction preventing the jury from considering the evidence of sexual

---

[1] See Neb. Rev. Stat. § 24-1106(1) (Reissue 2008).

assault to convict him of the child abuse charges and vice versa, (3) the trial court erred in failing to instruct the jury on the lesser-included offense of negligent child abuse, and (4) the trial court erred in failing to instruct the jury on the parental justification for use of force as set forth in Neb. Rev. Stat. § 28-1413 (Reissue 2008). Rocha raises a hearsay claim and other ineffective assistance of counsel claims which are not necessary for our analysis.

## IV. STANDARD OF REVIEW

[1-3] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[2] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[3] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[4] an appellate court reviews such legal determinations independently of the lower court's decision.[5]

## IV. ANALYSIS

### 1. Trial Counsel Was Ineffective in Failing to Move to Sever Sexual Assault Charge From Child Abuse Charges

[4] Rocha first takes issue with his charges being joined in a single trial. Rocha did not object to the alleged misjoinder and did not move to sever one or several of the charges. Absent plain error, we ordinarily will not address an issue that was not raised in the trial court.[6] Other courts have held that a trial court may raise the issue of misjoinder and sever joint charges

---

[2] *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012).

[3] *Id.*

[4] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[5] *State v. Poe, supra* note 2.

[6] See, e.g., *State v. Simnick*, 279 Neb. 499, 779 N.W.2d 335 (2010).

or defendants on its own motion.[7] But a court's failure to exercise that power is reviewable only for plain error.[8] Rocha has not argued plain error here.

However, the alleged misjoinder and failure to sever may also be addressed through the prism of ineffective assistance of counsel, which is what Rocha has done here. He argues that his counsel was ineffective in failing to object to the misjoinder of his charges and in failing to move to sever the charges. He argues that his counsel's inaction resulted in a fundamentally unfair trial and that his convictions must be reversed. We can conceive of no strategic reason for his counsel's failure to act, and that failure undermines our confidence in the outcome of the trial.

### (a) Addressing Ineffective Assistance of Counsel Claim on Direct Appeal

[5] Obviously, this is Rocha's direct appeal, and ineffective assistance of counsel claims are generally addressed through a postconviction action. This is frequently because the record is insufficient to review the issue on direct appeal.[9] There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.[10] But where the record on direct appeal rebuts that presumption, we may address the issue. Essentially, that presumption is rebutted when counsel's decision cannot be justified as a part of any plausible trial strategy.[11] As will be discussed more fully below, such is the case here.

---

[7] See, e.g., *U.S. v. McManus*, 23 F.3d 878 (4th Cir. 1994); *United States v. De Diego*, 511 F.2d 818 (D.C. Cir. 1975); 5 Wayne R. LaFave et al., Criminal Procedure § 17.3(a) (2007).

[8] See, e.g., *U.S. v. Hart*, 273 F.3d 363 (3d Cir. 2001); *U.S. v. Iiland*, 254 F.3d 1264 (10th Cir. 2001); *United States v. Palow*, 777 F.2d 52 (1st Cir. 1985).

[9] See, e.g., *State v. Watt*, 285 Neb. 647, ___ N.W.2d ___ (2013). See, also, *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003), *disapproved on other grounds*, *State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[10] See, e.g., *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013).

[11] See *Faust, supra* note 9.

The dissent, however, takes issue with our addressing Rocha's ineffective assistance claim on direct appeal and suggests that we should never resolve such claims on direct appeal. In support of its position, the dissent makes several arguments, most of which find support in the U.S. Supreme Court's opinion in *Massaro v. United States*[12]; the dissent quotes *Massaro* extensively. But in the final paragraph of *Massaro*, the Court stated:

> We do not go this far. We do not hold that ineffective-assistance claims must be reserved for collateral review. There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal. There may be instances, too, when obvious deficiencies in representation will be addressed by an appellate court *sua sponte*.[13]

Clearly, the U.S. Supreme Court disagreed with the dissent's categorical approach. We do too.

The dissent also poses a litany of questions that, in its view, might (on postconviction review) uncover a reasonable strategy behind trial counsel's failure to sever the charges. Putting aside whether the dissent's possible answers are actually probable or convincing, this "what if" routine could be done for any case on direct appeal. It is just another way for the dissent to argue that ineffective assistance claims should always be reserved for postconviction review. As noted above, we (and the U.S. Supreme Court) reject that position. Here, ineffective assistance is plain from the record and may be addressed on direct appeal. In fact, if appellate counsel is different from trial counsel, claims of ineffective assistance of counsel must be raised on direct appeal, or they are waived. The question is whether the record is sufficient to address the claim. In this case, the majority has determined the record is sufficient to address the claim.

---

[12] *Massaro v. United States*, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

[13] *Id.*, 538 U.S. at 508.

[6] As the analysis will show, the charges were improperly joined together, and considering the obvious risks to Rocha of proceeding with a joint trial on the charges, we can conceive of no justifiable reason for counsel's failure to object to the misjoinder and failure to move to sever. "[W]here no plausible explanation for an attorney's actions exists, to require the defendant to file a postconviction action can be only a waste of judicial time."[14]

The State and the dissent argue that a reasonable explanation could exist and that we should wait to address this claim until it is on postconviction review. As stated above, we disagree. But as an example of such an alleged explanation, the State claimed at oral argument that perhaps Rocha's counsel did not object to the joinder of the charges and move to sever because Rocha himself requested a single trial. We find this hypothetical unpersuasive because, regardless, the decision whether to object to the joinder and move to sever was a tactical decision for trial counsel to make rather than Rocha.[15]

### (b) Merits of Rocha's Ineffective Assistance of Counsel Claim

[7,8] To prevail on a claim of ineffective assistance of counsel under *Strickland*,[16] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[17] To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[18]

---

[14] *Faust, supra* note 9, 265 Neb. at 876, 660 N.W.2d at 872. See, also, *Hills v. State*, 78 So. 3d 648 (Fla. App. 2012); *People v. Karraker*, 261 Ill. App. 3d 942, 633 N.E.2d 1250, 199 Ill. Dec. 259 (1994).

[15] See, e.g., *State v. Fleury*, 135 Conn. App. 720, 42 A.3d 499 (2012); *Com. v. Hernandez*, 63 Mass. App. 426, 826 N.E.2d 753 (2005); *Com. v. Clarke*, 44 Mass. App. 502, 692 N.E.2d 85 (1998). See, also, Neb. Ct. R. of Prof. Cond. § 3-501.2.

[16] *Strickland, supra* note 4.

[17] *Watt, supra* note 9.

[18] *Id*.

[9,10] The petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[19] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[20] In addressing the "prejudice" component of the *Strickland* test, we focus on whether a trial counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.[21]

[11] Here, whether counsel's performance was deficient initially depends on whether the charges were properly joined under Neb. Rev. Stat. § 29-2002(1) (Reissue 2008). Section 29-2002 states in relevant part:

> (1) Two or more offenses may be charged in the same . . . information . . . in a separate count for each offense if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

The language of § 29-2002(1) is similar to the language found in Fed. R. Crim. P. 8(a). Offenses are properly joinable under § 29-2002(1) if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.[22]

At the outset, the exact charges in this case should be made clear. The State charged Rocha with first degree sexual assault of a child (as to J.S. only) under Neb. Rev. Stat. § 28-319.01 (Cum. Supp. 2012). The State also charged Rocha with four counts of child abuse (as to all four children, including J.S.) under Neb. Rev. Stat. § 28-707 (Reissue 2008). Rocha argues now on appeal that his trial counsel was ineffective for failing to object to the misjoinder of these charges and for failing to

---

[19] *State v. Robinson*, 285 Neb. 394, 827 N.W.2d 292 (2013).

[20] *Id*.

[21] See, e.g., *Strickland*, *supra* note 4; *Peralta v. U.S.*, 597 F.3d 74 (1st Cir. 2010); *Nguyen v. U.S.*, 487 Fed. Appx. 484 (11th Cir. 2012); *Henington v. State*, 2012 Ark. 181, ___ S.W.3d ___ (2012).

[22] See *State v. Hilding*, 278 Neb. 115, 769 N.W.2d 326 (2009).

move to sever these charges. Specifically, Rocha argues that the sexual assault charge should not have been tried with the four child abuse charges. We agree.

First, we conclude that the sexual assault charge and the child abuse charges were not of the same or similar character. For one thing, they are different crimes. Most notably, however, sexual assault, on its face, is sexual in nature, whereas child abuse is not. The sexual assault charge pertained only to J.S. and took place over a different period of time than the child abuse charges. As such, the sexual assault charge and the child abuse charges were not of the same or similar character.

[12,13] Second, the sexual assault charge was not based on the same act or transaction as the child abuse charges. Charges arise out of the same act or transaction if they are so closely linked in time, place, and circumstance that a complete account of one charge cannot be related without relating details of the other charge.[23] To be part of the same act or transaction, there must be substantially the same facts; i.e., one charge cannot be proved without presenting evidence of the other charge.[24] The fact that multiple crimes were allegedly committed about the same time or overlapped is not enough.[25]

Here, the alleged sexual assaults occurred separately and apart from the alleged child abuse. As noted above, J.S. was allegedly assaulted when the other children were not present. The alleged incidents occurred in the living room, Jessica's bedroom, the bathrooms, or the car. J.S. was the only child who was sexually assaulted and the only child who testified to being sexually assaulted. There was no evidence that the other children were sexually assaulted.

In contrast, many of the alleged incidents of child abuse occurred in the presence of more than one child and related to the striking of the children with a slipper, belt, or Rocha's

---

[23] *State v. Clark*, 228 Neb. 599, 423 N.W.2d 471 (1988) (quoting *State v. Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982)).

[24] See, *Clark, supra* note 23; *Brehmer, supra* note 23; *State v. Dandridge*, 1 Neb. App. 786, 511 N.W.2d 527 (1993).

[25] See *Brehmer, supra* note 23.

hand. Rocha allegedly choked two of the children with his hands. Evidence of the child abuse did not require evidence of the sexual assaults, and vice versa. The charges were not part of the same act or transaction.

Finally, the sexual assault charge and the child abuse charges were not connected together or parts of a common scheme or plan. The State argues otherwise, on the basis that each of the alleged crimes was part of a common scheme or plan to exercise control over the children. We find this unpersuasive—Rocha already controlled the children by virtue of being a stepparent. And the record does not demonstrate any other inferable common scheme or plan.

Furthermore, these charges are unlike charges in cases that we have found sufficiently related under the "connected together" or "parts of a common scheme or plan" provision of § 29-2002(1). For example, in *State v. Hilding*,[26] we allowed the joinder of sexual assault charges and a stalking charge because the telephone calls which formed the stalking charge included, as a "frequent topic," the alleged sexual assaults. And the defendant "admitted that the threats he made in the calls were a response to [the victim's] allegations that he had sexually assaulted her."[27] Such evidence would have been admissible in separate trials of the crimes and formed a series of connected transactions.[28] There is no such nexus between the alleged sexual assault and the alleged child abuse in Rocha's case.

In sum, the sexual assault charge was misjoined with the child abuse charges. Under § 29-2002(1), the charges were not of the same or similar character, part of the same act or transaction, or connected together or parts of a common scheme or plan. As such, the charges were misjoined, and had a proper objection been raised by trial counsel, the court would have been required to order separate trials.[29] That being the case,

---

[26] *Hilding, supra* note 22, 278 Neb. at 131, 769 N.W.2d at 339.

[27] *Id.*

[28] See *Hilding, supra* note 22.

[29] See, e.g., *U.S. v. Chavis*, 296 F.3d 450 (6th Cir. 2002); 5 LaFave et al., *supra* note 7, § 17.3(b).

and because of the obvious risks to Rocha of proceeding with a joint trial on the charges, we can conceive of no reasonable strategic reason for counsel's failure to object and move to sever the charges. This was deficient performance.

The question remains whether counsel's deficient performance actually prejudiced Rocha. In answering that question, and as stated previously, we focus on whether a trial counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. To show prejudice, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[30] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[31]

Because the charges were misjoined under § 29-2002(1), evidence of both the alleged sexual assaults and the child abuse of the other children was admitted in the joint trial. But had the charges been tried separately, evidence of the child abuse regarding the other children would have been inadmissible in a trial on the sexual assault charge, and vice versa, under Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2012), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The reason for the rule is that such evidence, despite its relevance, creates the risk of a decision by the trier of fact on an improper basis.[32] That risk is a substantial one.[33]

We do not agree with the State's claim that § 27-404(2) would be inapplicable in separate trials, because the evidence

---

[30] *Robinson, supra* note 19.

[31] *Id.*

[32] See *State v. Glazebrook*, 282 Neb. 412, 803 N.W.2d 767 (2011).

[33] See *Faust, supra* note 9.

of the child abuse charges and of the sexual assault charge was inextricably intertwined.[34] Here, there was no evidence that Rocha sexually assaulted the boys. The boys were not present when the alleged sexual assaults occurred. The State did not need to present evidence that Rocha abused the children to tell the entire story of sexual assault, and it did not need to present evidence of sexual assault to tell the entire story of child abuse.

Trying the sexual assault and child abuse charges together also essentially prohibited Rocha from moving to exclude prejudicial evidence based on Neb. Rev. Stat. § 27-403 (Reissue 2008), which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In a separate trial for child abuse, any probative value of the sexual assault evidence would be outweighed by unfair prejudice; the jury might convict Rocha of child abuse because he had sexually assaulted J.S. Similarly, in a separate trial for sexual assault, any probative value of child abuse evidence would be outweighed by unfair prejudice; the jury might convict Rocha of sexual assault because he abused the children.

The risk of undue prejudice, considering the type of evidence at issue, was high; evidence of sexual assault, by its nature, was highly volatile and had the potential to fan the jury's emotions. That risk was exacerbated by the fact that the court did not specifically instruct the jury on the importance of keeping the charges, and evidence related to those charges, separate during its deliberations. For these reasons, our confidence in the outcome of this case is undermined and we conclude that Rocha was prejudiced by his trial counsel's deficient performance.

---

[34] See *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012).

### 2. Failure to Request
### Limiting Instructions

Rocha claims trial counsel was ineffective because he failed to request a limiting instruction that the jury could not consider the evidence of sexual assault to prove the charges of child abuse and vice versa.

At oral argument, the State asserted hypothetically that an evidentiary hearing was required to examine counsel's strategy, because Rocha may have insisted on testifying, but in only one trial. Assuming for purposes of the State's assertion that an evidentiary hearing was required, the question remains whether the record is sufficient to address counsel's failure to request limiting instructions. We conclude that it is.

In reviewing the admissibility of other crimes evidence under § 27-404(2), an appellate court considers (1) whether the evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith, (2) whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice, and (3) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted.[35]

The charges were not of the same or similar character, were not based on the same act, and were not part of a common scheme or plan. The evidence of Rocha's sexual assaults was not relevant to the charges of child abuse and vice versa.

Evidence that Rocha made J.S. perform oral sex and that Rocha put his "private area in [her] bottom" would not be relevant for any proper purpose under § 27-404 as to the child abuse charges. Nor would evidence that Rocha spanked the children or allegedly physically abused the children be relevant to the sexual assault charges. The admission of this evidence without limiting instructions was unfairly prejudicial.

Once the charges were joined, an attorney with ordinary training and skill in criminal law would have requested these limiting instructions. We can conceive of no reasonable

---

[35] *Glazebrook, supra* note 32.

explanation why, if Rocha insisted on trying the charges in one trial, counsel would not ask for the limiting instructions.

For the reasons stated above, we conclude that Rocha received ineffective assistance of counsel. We therefore reverse the judgments of conviction.

### 3. Sufficiency of Evidence

Because we reverse the judgments of conviction, we examine whether the evidence admitted by the trial court was sufficient to sustain Rocha's convictions. The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict.[36] The evidence was sufficient to sustain the guilty verdicts.

### VI. CONCLUSION

For the reasons set forth herein, we reverse the judgments of conviction, vacate the sentences, and remand the cause for further proceedings.

REVERSED, SENTENCES VACATED, AND CAUSE
REMANDED FOR FURTHER PROCEEDINGS.

McCORMACK, J., participating on briefs.
HEAVICAN, C.J., not participating.

---

[36] See *State v. Sorensen*, 283 Neb. 932, 814 N.W.2d 371 (2012).

STEPHAN, J., dissenting.

This is the second time that this court has overturned a criminal conviction on the ground of ineffective assistance of counsel without a complete factual record to support its conclusion. As in the first instance,[1] I respectfully dissent.

As the majority acknowledges in its statement of the standard of review, a claim of ineffective assistance of counsel presents a mixed question of law and fact, requiring that we review factual findings of the lower court for clear error, but reach an independent determination of whether ineffective

---

[1] *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003) (Stephan, J., dissenting), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

assistance of counsel under the *Strickland v. Washington*[2] standard has been proved.[3] Here, we have no "factual findings of the lower court" to review on the issue of defense counsel's performance, because that issue was never tried. The issue before the district court was Rocha's guilt on the charged offenses, not counsel's performance in conducting Rocha's defense. That is precisely why we have held in countless cases that the record on direct appeal is insufficient for assessing claims of ineffective assistance of counsel.[4] The majority does not explain how it can review a mixed question of law and fact when the requisite factual findings have never been made by a trial court.

The reasons why an appellate court usually cannot and should not consider ineffective assistance of counsel claims on direct appeal from a criminal conviction were explained by the U.S. Supreme Court in *Massaro v. United States*.[5]

---

[2] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[3] *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012).

[4] See, e.g., *State v. Watt*, 285 Neb. 647, ___ N.W.2d ___ (2013); *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013); *State v. Ramirez*, 285 Neb. 203, 825 N.W.2d 801 (2013); *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013); *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012); *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 158, 184 L. Ed. 2d 78; *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011); *State v. Seberger*, 279 Neb. 576, 779 N.W.2d 362 (2010); *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010); *State v. Robinson*, 278 Neb. 212, 769 N.W.2d 366 (2009); *State v. Davis*, 276 Neb. 755, 757 N.W.2d 367 (2008); *State v. Jones*, 274 Neb. 271, 739 N.W.2d 193 (2007); *State v. Davlin*, 272 Neb. 139, 719 N.W.2d 243 (2006); *State v. Moyer*, 271 Neb. 776, 715 N.W.2d 565 (2006); *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006); *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005); *State v. King*, 269 Neb. 326, 693 N.W.2d 250 (2005); *State v. Brown*, 268 Neb. 943, 689 N.W.2d 347 (2004); *State v. Cook*, 266 Neb. 465, 667 N.W.2d 201 (2003); *State v. Leibhart*, 266 Neb. 133, 662 N.W.2d 618 (2003); *State v. Kelley*, 265 Neb. 563, 658 N.W.2d 279 (2003); *State v. Long*, 264 Neb. 85, 645 N.W.2d 553 (2002); *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001); *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999).

[5] *Massaro v. United States*, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

Although the Court acknowledged the possibility that ineffective assistance of counsel could be evident from a trial record alone, it observed that such cases would be few. The Court's reasons clearly apply to Rocha's direct appeal and explain why this court should decline to address his claims of ineffective assistance of counsel. The Court noted that a trial record reviewed on direct appeal is "not developed . . . for the object of litigating or preserving the [ineffective assistance of counsel] claim and thus often incomplete or inadequate for this purpose."[6] The Court further reasoned that because evidence at a criminal trial is "devoted to issues of guilt or innocence, . . . the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis."[7] For example, the Court noted that

> [i]f the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.[8]

And the Court reasoned that "[t]he trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them."[9] Because of the inadequacy of the trial record as a basis for adjudicating ineffective assistance of counsel claims, the Court concluded that such claims ordinarily should be litigated in the first instance in the district court, "the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial."[10]

Although this court generally requires ineffective assistance of counsel claims to be raised on direct appeal in order to

---

[6] *Id.*, 538 U.S. at 505.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

be preserved for postconviction review,[11] we have steadfastly followed the principle that the fact that such a claim may be raised on direct appeal does not mean that it can be resolved.[12] The determining factor is whether the record is sufficient to adequately review the question.[13] And with the exception of *State v. Faust*,[14] when the ineffective assistance of counsel at issue could involve trial strategy, we have always found a trial record reviewed on direct appeal to be insufficient for adequate review because it does not tell us the reasons defense counsel tried the case in a particular manner.[15] We have prudently followed this course even while expressing skepticism as to whether counsel could have been pursuing a reasonable trial strategy. For example, in *State v. Sidzyik*,[16] the defendant claimed on direct appeal that his trial counsel was ineffective in not objecting when the prosecutor made statements at sentencing after agreeing as a part of the plea agreement to stand silent. We concluded that there had been a material breach of the plea agreement and noted that "'it would be a rare circumstance when a lawyer with ordinary training and skill in the area of criminal law would not inform the court of the breach.'"[17] But we concluded that the record was insufficient to review the ineffective assistance of counsel claim because it was "not clear from the record . . . whether [the defendant's] counsel did not object to the breach of the plea agreement based on trial strategy."[18]

But in *Faust* and now in this case, the majority reaches and resolves the ineffective assistance of counsel claim on direct

---

[11] See, *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010); *State v. Marshall*, 269 Neb. 56, 690 N.W.2d 593 (2005).

[12] E.g., *State v. Watt, supra* note 4; *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011).

[13] *Id.*

[14] *State v. Faust, supra* note 1.

[15] See, e.g., cases cited *supra* note 4.

[16] *State v. Sidzyik, supra* note 12.

[17] *Id.* at 314, 795 N.W.2d at 288-89 (quoting *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003)).

[18] *Id.* at 314, 795 N.W.2d at 289.

appeal because it "can conceive of no reasonable strategic reason" for the challenged performance of defense counsel. I believe that this "we know it when we see it" approach to the question of whether counsel had no reasonable trial strategy is unsound.

Here, we simply do not have the information necessary to make a principled determination of whether counsel acted, or did not act, pursuant to some reasonable trial strategy. There is a strong presumption that trial counsel acted reasonably.[19] Trial counsel is afforded due deference to formulate trial strategy and tactics, and we are not to second-guess trial counsel's reasonable strategic decisions when reviewing claims of ineffective assistance of counsel.[20] And we are required to assess trial counsel's performance from the counsel's perspective when the counsel provided the assistance,[21] not in hindsight. The fact that a calculated trial tactic or strategy fails to work out as planned will not establish that counsel was ineffective.[22]

These sound principles recognize that no one knows more about a case than the lawyer who tries it. Before trial, a criminal defense lawyer conducts confidential communications with his or her client, interviews witnesses, and reviews police reports and other information compiled by the State. It is from this knowledge base that the lawyer formulates trial strategy by application of professional judgment to particular facts and circumstances. The trial record tells us how the lawyer elected to try the case, but it ordinarily does not disclose counsel's reasons for taking, or not taking, a particular action. Any experienced trial lawyer knows that there can be sound strategic reasons for not filing a motion, for not making an objection, or for not requesting a limiting instruction, even if there are grounds to do so. It is impossible to determine whether counsel acted or refrained from acting pursuant to a reasonable trial

---

[19] *State v. Watt, supra* note 4; *State v. Huston, supra* note 4.

[20] See, e.g., *State v. Huston, supra* note 4; *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

[21] *State v. Edwards, supra* note 20.

[22] *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011).

strategy without knowing what counsel knew at the time of the challenged conduct, and why he or she tried the case in a particular manner. We simply cannot tell from this record why Rocha's counsel did not file a motion to sever the charges or request a limiting instruction. And we should not guess or jump to the conclusion that we can "conceive of no strategic reason" for a particular action taken by counsel during the course of a criminal trial.

The majority's willingness to conclude that Rocha's counsel could not have been acting pursuant to a reasonable trial strategy is at odds with the reasoning of *State v. Poe*,[23] decided just last year. In *Poe*, we reversed an order denying postconviction relief without an evidentiary hearing because the files and records of the case, which are essentially the trial record, contained no explanation for trial counsel's failure to cross-examine a key prosecution witness with a prior inconsistent statement in which the witness identified someone other than the defendant as the perpetrator of the crime. We reasoned that "[u]nder these circumstances, trial counsel's strategy is a matter of conjecture."[24] In this case, as in *Poe*, the record does not disclose counsel's strategy in not taking a particular action at trial. Further factfinding was required in *Poe* in order to address that issue, and it is likewise required here. In my view, the majority's bold statement that it can "conceive of no strategic reason" for Rocha's counsel not to move to sever the charges or to request a limiting instruction is pure "conjecture," i.e., "the formation or expression of an opinion without sufficient evidence for proof."[25]

In addition to reaching a result without adequate factual support, the majority's reasoning prevents the relevant facts from ever being determined. Had this court followed our normal procedure and declined to reach the ineffective assistance claim on direct appeal, Rocha could have asserted the same claim in a motion for postconviction relief. Because the files

---

[23] *State v. Poe, supra* note 3.

[24] *Id.* at 774, 822 N.W.2d at 849.

[25] Webster's Encyclopedic Unabridged Dictionary of the English Language 310 (1989).

and records of the case now before us on direct appeal do not affirmatively show that his claim is without merit, he would be entitled to an evidentiary hearing[26] at which his trial counsel would likely be a witness.

And what if, at a postconviction evidentiary hearing, trial counsel testified that Rocha had always insisted that he was innocent of all charges and that the children fabricated their allegations because he was strict with them and was not their biological father? What if counsel testified that after consultation, Rocha insisted on testifying in his own defense, and counsel concluded that under Neb. Ct. R. of Prof. Cond. § 3-501.2(a), he was ethically required to abide by that decision? What if counsel testified that he determined that the mother of the children would testify in Rocha's defense, specifically that the children had never reported physical or sexual abuse to her and that the alleged sexual assault victim "had an imagination and made up stories"? What if counsel testified that given the absence of any physical evidence of sexual or physical abuse and Rocha's insistence on testifying in his own defense, counsel concluded that the best strategy for obtaining acquittal on all charges was to have a single trial in which he would seek to create reasonable doubt as to the credibility of the complaining witnesses, rather than moving to sever the charges and thus giving the State two opportunities to cross-examine Rocha and obtain felony convictions? What if counsel testified that he reviewed the pros and cons of severance with his client and that Rocha agreed with counsel's assessment that Rocha stood a better chance of acquittal on all charges in a single trial? What if counsel testified that he did not request a limiting instruction requiring the jury to consider the children's testimony only for specific purposes because counsel's strategy was to characterize the children's testimony as totally lacking in credibility and therefore unworthy of the jury's consideration on any charge? I think it is possible, if not probable, that a district court hearing this testimony would conclude that this strategy was reasonable from defense counsel's perspective at trial and was therefore not ineffective assistance of

---

[26] See Neb. Rev. Stat. § 29-3001 (Cum. Supp. 2012).

counsel. In such a scenario, Rocha's otherwise valid criminal convictions would not be overturned.

But because of the majority's preemptive adjudication of the ineffective assistance claim on the trial record alone, we will never know the reasons defense counsel did not move to sever the charges or request a limiting instruction. I submit that the majority cannot "conceive" of a strategic explanation for counsel's performance at trial because it does not know all the facts and has eliminated the procedural means of acquiring them. The majority's approach violates a fundamental principle of appellate review in criminal cases—a principle codified for over 90 years—that no judgment in a criminal case may be set aside if the court considers that no substantial miscarriage of justice has actually occurred.[27] Without having the facts in the record, an appellate court cannot assess whether a miscarriage of justice has occurred. Despite the absence of necessary facts and the existence of a procedure for ascertaining them, the majority nonetheless sets these judgments of conviction aside in contravention of the statutory mandate.

Finally, I cannot accept the majority's conclusion that this is a case in which requiring "the defendant to file a postconviction action can be only a waste of judicial time."[28] In my view, it is never a waste of judicial time to follow standard procedures designed to ensure that a court has all relevant facts necessary to decide whether a criminal conviction should stand. And I believe that it is the majority's approach which could, in this case or another, lead to what would truly be a waste of judicial time: an unnecessary retrial.

Finding no merit in any of Rocha's other assignments of error, I would affirm his convictions and sentences without reaching his ineffective assistance of counsel claim, thereby permitting him to pursue his postconviction remedy on that issue.

CASSEL, J., joins in this dissent.

---

[27] See Neb. Rev. Stat. § 29-2308 (Reissue 2008).

[28] *State v. Faust, supra* note 1, 265 Neb. at 876, 660 N.W.2d at 872.