IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. STAPLETON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TYRON S. STAPLETON, APPELLANT.

Filed February 18, 2020.    No. A-19-371.

Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

Ashley L. Albertsen, of Smith, Slusky, Pohren & Rogers, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Tyron S. Stapleton appeals his conviction and sentence in the district court for Douglas County of first degree sexual assault of a child. He alleges that his trial counsel was ineffective in several respects and that he received an excessive sentence. We find the record on direct appeal is insufficient to address two of the ineffective assistance of counsel claims, and we reject his remaining arguments. We therefore affirm.

## BACKGROUND

The operative information alleged that between February 1, 2014, and October 27, 2015, Stapleton subjected S.P. to sexual penetration. Stapleton was born in 1984, and S.P. was born in 2001. The sexual assault did not come to light until a child abuse and neglect report was made in July 2017. S.P. then underwent a forensic interview and medical examination at a child advocacy center. In March 2018, during the investigation into the sexual assault, S.P. committed suicide.

Nevertheless, a jury trial commenced in January 2019. During voir dire, the State disclosed S.P.'s suicide to the jury pool without objection from Stapleton. The jury ultimately found Stapleton guilty. He was sentenced to 25 to 30 years' imprisonment. Stapleton now appeals. Additional details will be provided below as necessary to address the assigned errors.

## ASSIGNMENTS OF ERROR

Stapleton assigns that his trial counsel was ineffective in (1) failing to file a motion under Neb. Rev. Stat. § 27-403 (Reissue 2016) to exclude evidence of S.P.'s suicide; (2) soliciting inadmissible testimony from witnesses; (3) failing to provide him with the information necessary to knowingly, voluntarily, and intelligently reject an offered plea; and (4) failing to perform basic due diligence. He also assigns that he received an excessive sentence.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id*.

## ANALYSIS

*Ineffective Assistance of Counsel.*

Stapleton's appellate counsel is different from his trial counsel. His first four assigned errors allege that his trial counsel was ineffective in various respects. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Mrza, supra*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id*.

Stapleton first asserts that trial counsel was ineffective in failing to file a motion pursuant to § 27-403 to exclude evidence of S.P.'s suicide. Section 27-403 allows the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

During voir dire, the State asked if any of the potential jurors would not be able to find Stapleton guilty if S.P. did not testify, without yet revealing S.P.'s suicide. One potential juror expressed concern that S.P.'s failure to testify could indicate that she did not want to speak under oath because she was lying. Another potential juror agreed and said in that instance she would want an explanation as to why S.P. was not available to testify. An off-the-record discussion was then held between the prosecutor and trial counsel, after which the prosecutor informed the jury pool that S.P. had committed suicide and would therefore not be available to testify at the trial.

The record on direct appeal does not reveal the contents of the discussion between the prosecutor and trial counsel or trial counsel's motivation for not attempting to prevent the disclosure of S.P.'s suicide to the jury pool. We therefore conclude that the record is insufficient to address this claim.

When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id*.

On at least one occasion, however, the Nebraska Supreme Court has addressed a claim of ineffective assistance of counsel on direct appeal where it could "conceive of no reasonable strategic reason" for counsel's performance. *State v. Rocha*, 286 Neb. 256, 269, 836 N.W.2d 774, 784 (2013). Stapleton contends that the outcome should be the same here, arguing that trial counsel's failure to exclude evidence of S.P.'s suicide could not have been a reasonable trial strategy. He claims he was unfairly prejudiced because the jury was allowed to consider the emotionally charged evidence that a young teenage girl took her own life. We have not found precedence for whether evidence of a victim's suicide is admissible in Nebraska, and another court has observed that "this is not a frequently litigated issue." *Palilonis v. State*, 970 N.E.2d 713, 725 (Ind. App. 2012).

We note that trial counsel had a recurrent theme throughout the case that the reason Stapleton did not come forward to report S.P.'s alleged advances was because S.P. told Stapleton that she would kill herself if he told anyone what happened. During closing arguments, trial counsel reiterated the defense's theory that S.P. was infatuated with Stapleton and attempted to initiate a relationship with him, including performing oral sex on him on two occasions without his consent. Trial counsel alleged that Stapleton felt threatened by S.P. because she was blackmailing him, claiming that she would "cry rape" if he did not do what she wanted him to do and that she would kill herself if he told anyone. Trial counsel repeated that Stapleton never told anyone what S.P. was doing, in part because he feared that she would harm herself like she had threatened to do. Trial counsel argued that Stapleton's fears were valid because S.P. ultimately did "cry rape" and took her own life. Based on the foregoing, we find that trial counsel's acquiescence

in revealing S.P.'s suicide could have been trial strategy, but the record before us is insufficient to make such a determination.

In his second assigned error, Stapleton alleges that trial counsel was ineffective in soliciting inadmissible testimony from witnesses. He specifically challenges testimony from the nurse practitioner who conducted the medical examination at the child advocacy center and the forensic interviewer. He claims their testimony that S.P. disclosed to them that Stapleton had subjected her to penile-vaginal contact contradicted his defense that any sexual contact between him and S.P. was limited to two instances where S.P. performed oral sex on him without his knowledge or consent. Stapleton argues that had trial counsel "not opened the floodgate of inadmissible hearsay, the State would have been prevented from obtaining testimony that [S.P.] disclosed penile-vaginal contact." Brief for appellant at 16. We disagree and conclude that the nurse practitioner's testimony was admissible under the hearsay exception contained in Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016), and the forensic interviewer's testimony was cumulative to that of the nurse practitioner. We also note that the nurse practitioner testified during direct examination as to the specific type of contact S.P. disclosed to her, without objection from Stapleton.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Reissue 2016). See, also, *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017). A declarant's out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a definitional exclusion or statutory exception. See, Neb. Evid. R. 802, Neb. Rev. Stat. § 27-802 (Reissue 2016); *State v. Jedlicka, supra*.

Rule 803(3) provides that the hearsay rule does not exclude statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. Rule 803(3) is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment. *State v. Jedlicka, supra*.

In order for statements to be admissible under rule 803(3), the party seeking to introduce the evidence must demonstrate (1) that the circumstances under which the statements were made were such that the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) that the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional. *Id*.

In the present case, the witness is a nurse practitioner and program manager of the medical department at the child advocacy center. She is also certified as a sexual assault nurse examiner. She explained that obtaining a history from the patient is one of the most important things in any medical examination. Any information she can obtain related to why the child is before her helps guide her medical evaluation, any testing she does, treatment recommendations, and any potential follow-up recommendations.

The nurse practitioner explained that the information she was provided regarding the disclosures S.P. made during her forensic interview as well as the information S.P. herself provided to the nurse practitioner was important to help guide the examination and treatment, and she relied on it in conducting her examination and treatment. In addition to assessing S.P.'s physical

well-being during the examination, the nurse practitioner assessed S.P.'s overall safety including any mental health concerns and psychosocial concerns that might involve her household. The nurse practitioner conducted a physical examination of S.P., but S.P. declined the anogenital examination.

The nurse practitioner testified that S.P. disclosed to her that she had been subjected to penile-vaginal penetration by Stapleton. She said that S.P. specifically said she had been "raped" 2 years earlier. The nurse practitioner asked S.P. to clarify what she meant by the term "rape," and S.P. said that Stapleton had put his penis in her vagina without her consent. S.P. told the nurse practitioner that the penetration occurred one time and described pain and bleeding with the incident.

On cross-examination, trial counsel clarified with the nurse practitioner that S.P. had used the word "rape," had said that it meant unconsensual sex, and had reported only one incident of sexual contact. Trial counsel asked whether the nurse practitioner had inquired about other types of sexual contact, including oral sex, and the nurse practitioner said that S.P. denied that any oral sex had occurred.

Based on the foregoing evidence, we conclude that S.P.'s statements to the nurse practitioner were made for the purposes of medical diagnosis and treatment, and therefore, they were admissible within the medical exception to the hearsay rule. The State elicited from the nurse practitioner on direct examination that S.P. had told her that one instance of penile-vaginal penetration from Stapleton had occurred; thus, trial counsel did not elicit any additional details from the nurse practitioner on cross-examination that she had not already revealed during direct examination and which was admissible under the hearsay exception. Accordingly, trial counsel's performance regarding his questioning of the nurse practitioner was not deficient.

Similarly, the statements S.P. made to the forensic interviewer may have been independently admissible because the Supreme Court has held that statements made to a forensic interviewer may also qualify for the rule 803(3) exception, if they are a part of the chain of medical care. See *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012). We need not resolve this question here, however, because the testimony trial counsel elicited from the forensic interviewer on cross-examination was cumulative of the testimony the nurse practitioner provided on direct examination. See *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019) (defendant not prejudiced by failure of trial counsel to object to cumulative testimony). Therefore, Stapleton's trial counsel did not elicit inadmissible testimony, contrary to Stapleton's assigned error.

Stapleton next assigns that his trial counsel was ineffective in failing to provide him with the information necessary to knowingly, voluntarily, and intelligently reject the plea agreement that the State had offered to him. At a hearing prior to trial, trial counsel stated on the record that the State had made an offer to Stapleton to allow him to plead to an amended charge of attempted sexual assault in the first degree, but that Stapleton had chosen to decline the offer. During Stapleton's testimony at trial, he claimed that he had never seen a recording of the interview he did with an Omaha police detective on the night he was arrested or a recording of the forensic interview of S.P. He further stated that until trial, he had not heard recordings of telephone calls he made from jail. He now asserts that had he had this information prior to trial, he may not have rejected the plea agreement that had been offered to him.

The record before us does not disclose whether or to what extent trial counsel shared this information with Stapleton or whether it factored into his decision to decline the plea agreement. Therefore, the record on direct appeal is insufficient to address this claim.

In his final claim of ineffective assistance of counsel, Stapleton assigns that trial counsel was ineffective in "failing to perform basic due diligence." Brief for appellant at 2. The Supreme Court recently held that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). In *Mrza*, the Supreme Court found that an error assigning that trial counsel was ineffective in "'fail[ing] to adequately investigate [Mrza's] defenses and effectively cross-examine witnesses'" lacked the specificity required on direct appeal. *Id*. at 935, 926 N.W.2d at 86. We find the same is true here, and because Stapleton's brief was filed after the release of *Mrza*, we decline to address this assigned error.

*Excessive Sentence.*

Stapleton asserts that the district court imposed an excessive sentence. First degree sexual assault of a child is a Class IB felony, which carries a mandatory minimum of 15 years' imprisonment up to a maximum of life imprisonment. Neb. Rev. Stat. §§ 28-319.01 (Reissue 2016) and 28-105 (Supp. 2019). Thus, Stapleton's sentence of 25 to 30 years' imprisonment is within the statutory limits, and we review it for an abuse of discretion.

An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and just result. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017). When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Stapleton argues that his sentence is excessive because of his lack of a significant criminal record, the lack of violence involved in the offense, and the overall nature of the offense. He points out that S.P. wrote in her diary that she had fallen in love with him and that her account is limited to one isolated event. He notes that S.P. continued to place herself in his vicinity for months after the singular event, going so far as to go to his home after he and his family had moved away from her family. Stapleton's trial counsel raised the same arguments at the sentencing hearing, including noting Stapleton's insignificant criminal history and asserting that "to the extent, a minor can consent, this was a consensual relationship on [S.P.'s] part."

The presentence investigation report (PSR) repeatedly notes that not only did Stapleton fail to accept any responsibility for his actions, he continued to blame S.P. and play the role of the victim. His own comments at the sentencing hearing underscored the comments in the PSR. The

- 6 -

district court found that Stapleton's comments to the probation officer during the presentence interview were not credible, nor were his comments at sentencing.

It is clear that Stapleton took advantage of a vulnerable young girl, who he, in his own words, considered to be a daughter. Stapleton scored as a very high risk candidate for community based interventions. The PSR states that Stapleton "takes no responsibility for his sexual assault conviction and blamed everyone for the conviction but himself." Thus, based on the serious nature of the offense, the outcome of S.P.'s suicide, and Stapleton's refusal to accept responsibility, the probation officer completing the PSR recommended that the court sentence Stapleton to an extensive period of incarceration. The sentence imposed is on the lower end of the statutory range. There is no indication that the court considered any inappropriate factors or failed to consider those Stapleton highlights on appeal. We therefore conclude that the sentence the district court imposed is not an abuse of discretion.

## CONCLUSION

The record on direct appeal is insufficient to address the claims that trial counsel was ineffective in failing to file a motion to exclude evidence of S.P.'s suicide and failing to share information with Stapleton such that he could make an informed decision regarding an offered plea agreement. We reject his remaining ineffective assistance of counsel claims and find no abuse of discretion in the sentence imposed. The conviction and sentence are therefore affirmed.

AFFIRMED.